1828 United States v. Nichols. Hi Ms. Zion. Good afternoon. May it please the court, my name is Kim Zion and I represent Jason Nichols. There are basically four issues to address in this matter today. The first three are tied together, the fourth is rather separate and distinct. The first one basically goes to the merits of Mr. Nichols' suppression motion where it is our position that his statements and conduct involved in the turning over of a bag full of ammunition basically amounted to an involuntary confession elicited by a false promise of leniency by his probation officer. I believe the district court characterized the competing testimony as basically a swearing contest between the two and it came down to a credibility issue. My concern about the way that this issue was decided is that I do think that Mr. Nichols' state of mind matters significantly and the court per Magistrate Crocker acknowledged that perhaps Mr. Nichols had convinced himself that the probation officer really did offer him absolution in the abstract and I think that his perception of what his probation officer promised is very, it's true that the magistrate judge and district court speculated at one point as to whether he believed he'd been granted immunity. Ultimately the district court addressed the issue directly at the hearing and found that it was a willfully false statement made to try to duck the charge and given our standard of review why wouldn't that be enough to support the enhancement for obstruction? Well, several reasons. I think one of the one of their reasons for determining that he made a willful statement and willfully basically lied is that they were in determining the credibility they used the January 7th incident as a basis for saying that he can't be credible today because on January 7th he was able to readily access a gun. That is a fact that is controverted. There's evidence suggesting that he didn't and to basically determine credibility and base a sentence on a factual assertion that is not proven and had statements to the contrary saying it wasn't a gun. I think that's a big problem. To be obstruction there has to be a willful intent to obstruct and it doesn't make any sense that Mr. Nichols would go down in his basement two weeks after he consented to a search warrant. There's no ammunition found. His probation officer comes for another home visit and I can't imagine why someone would say hey by the way come here I've got a bag of ammunition for you and turn it over if they weren't under the impression that they would not get in any more trouble for that. And I think that that state of mind is very important. That it's basically central to the determination of whether his confession was voluntary and then that goes to whether or not he willfully obstructed justice. So I think the willfulness again this all goes back to the fact that the court determined credibility based on a fact scenario that that it should not have assumed and it just it doesn't it wasn't willful. I think that given that the court recognized that he perhaps did believe that he would not get in trouble his testimony at the suppression motion doesn't appear to be willful in the sense of traditional type of perjury. And so I think basically because we both have the credibility determination and the willfulness determination based on that January 7th incident I think that's what the problem is and I think the government in their brief argues that if that was the case that was harmless error I don't know how that can be harmless when that was central to the matter. That all ties into whether or not Mr. Nichols should have received the downward adjustment for acceptance of responsibility. I think the law is very clear that merely pursuing the suppression of evidence in and of itself should not preclude a defendant from receiving that. That's been made clear in factual guilt and a denial of legal guilt. Mr. Nichols entered a timely guilty plea. He never denied possessing the ammunition. He provided it to the government. He never denied his prohibited status and again I think that because of those reasons he should have received that downward adjustments for target practice and sporting activity. I am. It's undisputed by both sides that target shooting does equal a sporting purpose for the purposes of the guidelines and we have the courts in the sentencing decision saying there's virtually no weapon that you couldn't say wasn't used in a sporting activity. So I don't know how we get around the statement that the court says if you consider target practice be a sporting activity you know then yeah I think he said the exception swallows the rule. So basically the court said he wasn't considering that but that's not proper that's not what the law is. Target shooting is a sporting activity. You know that that was held in it's been held already by the court. The government doesn't dispute that. Both the court and. What evidence did you put in that that's what he had this ammunition for? I believe well I believe the evidence was contained throughout the record. It was in the objections to the pre-sentence and the. What evidence did you put in to show that that's why he had this? Just his just his statements in the pre-sentence investigation. I believe that the PO actually also conceded in in both the pre-sentence report and the government I believe in this argument conceded that he was an avid hunter as well. So that he was an avid hunter as well. Avid hunter. Right this wasn't all hunting ammunition there was handgun ammunition in addition to the shotgun and rifle ammunition and I think that's what the judge was focusing on. It was and the court and the government both focused on whether or not a handgun could be a weapon used for target shooting and I think to say. Right what was the evidence that that's why he had the handgun ammunition? Only his only his statements and his objections. Well what did he say in that regard? Did he swear out an affidavit saying I am an avid target shooter and I was using this ammunition for my handguns going to target practice? That's highly unlikely given that he was a prohibited person. He did not it's just mentioned in the objections. Right and it's your burden so. It is but my problem is it's not what the court found. The court didn't say that we didn't mean our burden of proof. The court said if said if you consider target practice to be a sporting activity then you know that they had a problem with that. So the court was not considering target practice to be a sporting activity and they were also. I don't really understand this this first place because if what we're talking about are prohibited persons possessing firearms in other words felons or persons who are otherwise prohibited under the statute from possessing firearms then why should it matter if they possess them for sporting because they're not allowed to have them for any purpose? Just the guidelines provide 2k2.1 provides that if the ammunition he possessed was solely for the sporting purpose. Right I mean I know what it says but I don't know why it exists it doesn't make any sense to me because this population is not permitted to use handguns or any firearm for any purpose sporting included as I understand it. Well that's true I just think that probably goes to you know he hadn't been a felon for that long you might he might have still had it there and they're trying to make a distinction between someone who uses those things for illegal purposes and those who use them for sporting activities. I mean isn't it fairer reading of the court's decision that what it held was that a defendant can't utilize the sporting practice exception by simply stating that the ammunition is used for target practice without more because otherwise what you would have would be all ammunition would be swept into sporting practice exception because it all can be used for target practice. That's not what the court said though is a problem what they said was that if you consider target practice to be a sporting activity and it is and I you know it's what the court said it's what they base their decision on and I don't think that that was a Good afternoon Your Honor. Good afternoon. David Reinhart for the United States. I'll start and go briefly through the promise of immunity look at it boiled down to credibility there were two different versions of what happened the court listened to both sides and the court made a determination that the probation officer was credible and the defendant was not and it really is the mere conclusion without any underlying fact-finding sufficient here and where it contradicted some other language of the court. In this particular case the court did go through some of the its reasons as to why it found that the probation officer credible and the defendant not specifically as far as a common-sense type argument why would a probation officer with 23 years of experience it's office policy that you don't give immunity agreements given immunity agreement to a defendant especially after this probation officer knows on January 7th this particular defendant was involved in a domestic dispute in which they threatened a victim and there's another empty there's an empty gun case suggesting that maybe there's another gun out there it just just doesn't make any sense that that a probate probation officer would do that. A lot of things don't make sense in the law and in life. And also the court touched on the credibility of the defendant how he was questioned by the probation officer on previous occasions whether he had any guns or or ammo and and he denied that and that was a basis for the court's reasoning yes the court did mention the January 7th incident as another factor and I don't know if it's all that unreasonable of a leap for the court because the victim initially said that yes she was threatened with a gun from this particular defendant and they found a gun at the residence so I think that the basis was solid and in and when you look at everything given the deference given to the trial court on credibility determinations defendants cannot show clear error. The obstruction and acceptance of responsibility objections flow from that I think that's been adequately briefed in our brief so I won't go through that. I will touch on the lawful sporting use a provision I think Judge Sykes hit on it it's the defendant's burden in this case that the to establish that this sporting exception applies and there is no evidence of it there's no evidence of target shooting that was found at the residence no targets no unspent or no shell casings there's no witnesses that were produced to say yes we would go to this residence and target shoot there's no evidence that defendant went to any sort of shooting range no membership to any shooting range the only evidence was this unsworn statement that occurred in the sentencing memorandum that's the first time that target shooting came up in my interpretation of what the court said in this is the exception does swallow the rule if all you have to say is I'm a target shooter without offering any evidence of it that's what's your best guess is what this is supposed to cover is it supposed to be some kind of safe harbor for recently convicted felons to not be hammered for failing to divest themselves of their collections fast enough or what what it's supposed to be doing I don't know exactly my I guess my interpretation of it would be they want to treat hunters maybe different from individuals and more risky use of handguns I agree with you when you think about this why are they getting a reduction for it sometimes is confusing do you think we can be certain that the court understood that I as far as what with the statement that it made in regards to target shooting my interpretation was that the court understood I it wasn't crystal clear I think from the record I think there can be multiple interpretations but again when the court said I think the rule I think that's what the court was getting at that look at how can we just say target practice without any other evidence and then everybody would get the reduction for it's sort of an affirmative defense is not another to the general rule you say some guy ought to get the penalty for having this to the ammunition the other side simply said well he only had a target practice when they're it's incumbent upon them to introduce some evidence by way of affirmative defense and then you've got a robot but until they do exactly that initial burden is upon them to produce some evidence of target shooting and your point is here that all we have is the assertion all we had is an assertion the sentencing that are unsworn right and there was just nothing to back that up thank you thank you how much time well do you want some oh okay well you were CGA of course see I keep saying CGA I don't know what I'm talking CJA and you have the thanks of the court for the hard work you've done for your client all right everyone go home because that's what we're going to do this court is adjourned until Monday morning until Monday morning The Court is adjourned.